### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**JEREMY ELLIS,**

      **Petitioner,**

**vs.**

                               **CASE NO. 4:09cv174-RH/WCS**

**KENNETH S. TUCKER, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**

_____/

### <u>REPORT AND RECOMMENDATION</u>

      This is a petition for writ of habeas corpus filed by Jeremy Ellis pursuant to 28

U.S.C. § 2254.  Doc. 1.  Petitioner challenges his convictions after a nolo contendere

plea for a combined twenty-five counts of bank deposit fraud, forgery, uttering, and

_____

      [1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent.  Fed.R.Civ.P. 25(d).

grand theft, in case number 2005-CF-964; a combined fifteen counts for bank fraud, bank deposit fraud, forgery, uttering, and grand theft in case number 2005-CF-991; and a combined twenty-four counts in case number 2005-CF-1073 for bank fraud, bank deposit fraud, forgery, uttering, and grand theft. All cases were in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida. *Id.* Petitioner is serving a combined 10 year sentence.

Respondent filed an answer and the record in paper form. Doc. 9. References herein to exhibits are to the record in paper form. Petitioner filed a traverse. Doc. 12.

The convoluted procedural history of Petitioner's state court litigation is set forth in detail by Respondent. Doc. 9, pp. 2-14. Petitioner previously filed a habeas petition in this court, which was dismissed without prejudice for failure to exhaust. Case No. 4:07cv361-SPM/WCS; Ex. PP.

Respondent has calculated the timing of this petition and concedes that it was timely filed. Doc. 9, p. 14.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner must first present all federal claims in state court. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). He "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845, 119 S.Ct. at 1732; Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004)

(applying this "one complete round" requirement to the state collateral review process as well as direct appeal).  If a claim is not properly presented in state court and procedurally barred from further state court review, a petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). On the other hand, a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2).

For a claim which has been properly exhausted and adjudicated on the merits in state court, review is limited.  The state court's determination of a factual issue is presumed correct, unless the petitioner can rebut the presumption by clear and convincing evidence.  § 2254(e)(1).  If the petitioner failed to develop the factual basis for a claim in state court, an evidentiary hearing in § 2254 proceedings is limited by § 2254(e)(2).  *See also* Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that review under § 2254(d)(1), discussed here ahead, "is limited to the record that was before the state court that adjudicated the claim on the merits," so the federal court may not rely on new evidence developed in the § 2254 proceedings).

Further, the petitioner must show that the state court's adjudication of the claim:

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).[2]

> Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.  Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.  28 U.S.C. § 2254(b). If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.[3]  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in § § 2254(d)(1) and (2) applies.  Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

Harrington v. Richter, 562 U.S. __, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011).

If the state court issues an opinion, it need not cite or even be aware of controlling Supreme Court cases under § 2254(d).  *Id.,* (citation omitted).  And, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."  *Id*

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

[2] In Cullen, the Court did not address whether a district court could choose to hold a hearing under § 2254(e)(2) to determine whether § 2254(d)(2) was satisfied.  131 S.Ct. at 1401, n. 8 and 1411, n. 20.

[3] To excuse a procedural default, as noted in Wainwright and the cases cited *supra*, a petitioner must demonstrate either cause and prejudice or actual, factual innocence.

Under <u>Strickland</u>, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  <u>Fugate</u>, 261 F.3d at 1217 (citation omitted).  There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  *Id.* (citations omitted).

Even if deficient performance is demonstrated, a petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068. It must be "reasonably likely" the result would have been different; "[t]he likelihood of a different result must be substantial, not just conceivable."  <u>Harrington</u>, 131 S.Ct. at 793 (citations omitted).

While <u>Strickland</u> explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of <u>Strickland</u> is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

The <u>Strickland</u> standard itself is hard to satisfy, but:

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The standards
> created by *Strickland* and § 2254(d) are both "highly deferential," and
> when the two apply in tandem, review is "doubly" so. The *Strickland*
> standard is a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness
> under § 2254(d). When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable. *The question is whether there is any*
> *reasonable argument that counsel satisfied Strickland's deferential*
> *standard.*

Harrington, 131 S.Ct. at 788 (citations omitted, emphasis added).

**Legal analysis**

### Ground two

It is more efficient for this court to address ground two first.[4]  Petitioner contends that his no contest plea was involuntary because he was incompetent to enter the plea. He asserts that he was under the influence of psychotropic medication when he entered the plea, and under the stress of the recent death of his mother.  Doc. 1, p. 4.

Respondent states that Petitioner raised this claim in a motion construed by the state trial court as a motion to withdraw the plea pursuant to FLA. R. CRIM. P. 3.170(1). Doc. 9, p. 38, citing Exs. J, K1, and K2.  It was denied by the trial court after a non-evidentiary hearing and the denial of the claim was affirmed by the First District Court of Appeal.  *Id.*, citing Exs. A1, p. 4; A2, p. 4; A3, p. 4; K2; Y; PP. 7-13; W; and AA.  It will

---

[4] Ground one alleges ineffective assistance of trial counsel with respect to efforts to withdraw the no contest plea.  Doc. 1, p. 4.  The basis for withdrawal of the plea is the same as alleged in ground two.  If Petitioner did not have a valid basis to withdraw his plea, then he cannot show ineffective assistance of trial counsel with respect to his competence to enter the plea.

be assumed that Petitioner properly exhausted state court remedies as to this claim,[5]

although if he did not, this court should nonetheless reach the merits of the claim to

deny it.  28 U.S.C. § 2254(b)(2).

"A guilty plea is knowingly and voluntarily made if the defendant enters his plea

without coercion and understands the nature of the charges and the consequences of

his plea."  United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009), *cert. denied*,

130 S.Ct. 2403 (2010).  "In addition to determining that a defendant who seeks to plead

guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his

constitutional rights is knowing and voluntary."  Godinez v. Moran, 509 U.S. 389, 401,

113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993).  "In this sense there is a 'heightened'

standard for pleading guilty and for waiving the right to counsel, but it is not a

heightened standard of competence."  *Id.*, 509 U.S. at 400-401, 113 S.Ct. at 2687.

> The purpose of the "knowing and voluntary" inquiry . . . is to determine
> whether the defendant actually does understand the significance and
> consequences of a particular decision and whether the decision is
> uncoerced.  See *Faretta v. California*,[6] supra, 422 U.S., at 835, 95 S.Ct.,
> at 2541 (defendant waiving counsel must be "made aware of the dangers
> and disadvantages of self-representation, so that the record will establish
> that 'he knows what he is doing and his choice is made with eyes open' ")
> (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63
> S.Ct. 236, 242, 87 L.Ed. 268 (1942)); *Boykin v. Alabama*,[7] 395 U.S., at

---

[5] Petitioner was granted a belated appeal from denial of the Rule 3.170(1) motion. Ex. TT; Ellis v. State, 975 So. 2d 1192 (Fla. 1st DCA 2008).  He was appointed counsel and his attorney, Joel Arnold, filed an *Anders* brief.  Ex. UU.  Petitioner then filed a *pro se* brief.  Ex. VV.  The denial of the motion to withdraw the plea was affirmed *per curiam.*  Ex. WW; Ellis v. State, 6 So. 3d 56 (Fla. 1st DCA 2009).

[6] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

[7] Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

244, 89 S.Ct., at 1712 (defendant pleading guilty must have "a full
understanding of what the plea connotes and of its consequence").

*Id.*, n. 12.

The state circuit court held a hearing on Petitioner's motion to withdraw his plea

on December 8, 2005.  Ex. K2.  Petitioner was represented by an attorney at that

hearing.  *Id.*, p. 1.  The court had the plea colloquy before it, and made reference to it

numerous times.  *Id.*, pp. 4-11.  Circuit Judge Dekker noted at the hearing that she

knew at the time that she took Petitioner's plea that Petitioner's mother had just died,

and she said she was "pretty careful about that."  *Id.*  She said that she knew that

Petitioner's feelings were hurt that morning, and that Petitioner said he wanted to take

care of "everything" that morning, and Judge Dekker told him that these may be his

reasons to enter a plea, but "it won't be a reason to change your mind later."  *Id.*, p. 4.

She said to Petitioner that she "went on for like twenty something pages here, talking

about you, having a dialogue with you.  You know, it wasn't yes, ma'am, yes, ma'am,

plea taken, goodbye."  *Id.*, p. 5.  The court determined:

> Well, having studied the plea colloquy, and you obviously had a very fair
> sentencing proceeding, it was lengthy, too, I'm going to deny your motion
> to withdraw the plea.  I feel it was voluntary and freely entered, and
> certainly with knowledge that you were fully, fully advised.  And if you've
> now regretted that decision, that that is not a basis to set aside the plea.
> Because all the things you talked about, I, as best I can tell from the
> transcript, I tried to cover that base many times over.

*Id.*, p. 10.  Judge Dekker said: "Because I talked to you at length.  You responded.  You

made sense."  *Id.*  "You said you understood.  Not once, but two, three, four, five times

over.  You can tell me you didn't understand, but it doesn't match with what the

evidence is at the hearing that we took, the plea hearing." *Id.*, p. 11.  She then denied the motion to withdraw the plea.  *Id.*

The plea colloquy took place before Judge Dekker on August 17, 2005.  Ex. D1. Petitioner had originally been offered a 30 month prison sentence followed by twelve and one-half years of probation in exchange for a plea, but he rejected that offer; Petitioner had come before the court four times and rejected plea offers, and all prior offers had been revoked.  *Id.*, p. 4.  His attorney, Robert Morris, told Judge Dekker that he recommended a "straight up" plea because Petitioner scored 60 months under the sentencing guidelines, there were charges in Alabama, and the State of Florida was going to file additional charges.  *Id.*, p. 5.

Petitioner told the court that he wanted to withdraw his motion to replace his attorney and cancel the *Nelson* hearing[8] set for September 6, 2005, and the court permitted him to do that.  *Id.*, p. 7.  Petitioner's attorney told the court that he had advised Petitioner that he faced a sentence from 66.6 months to 380 years.  *Id.*, p. 8. The State agreed not to file any other charges.  *Id.*, p. 10.  Petitioner agreed to waive extradition for Alabama charges, and told the court that the Alabama case was a

_____

[8] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973) held that if a defendant wishes to discharge court appointed counsel before trial claiming incompetency of counsel, "the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.  If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense.  If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute."  Hardwick v. State,  521 So.2d 1071, 1074-75 (Fla. 1988) (quoting Nelson and approving this procedure).

misdemeanor case.  *Id.*, p. 11.  Petitioner said he understood that he waived a trial by

jury, and he said he understood Judge Dekker's explanation as to lesser included

offenses.  *Id.*, pp. 12-13.  Petitioner said he "went all the way through college," and said

he understood everything about the plea forms he signed, except for the score sheet.

*Id.*, p. 13.  Then the following colloquy took place:

> THE COURT:          Okay.  Now, have you ever been treated for or diagnosed
>                     with mental problems?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:          How long ago?
>
> THE DEFENDANT: I attended mental health in Montgomery, Alabama.
>
> THE COURT:          Okay.  And did you have any specific diagnosis?
>
> THE DEFENDANT: I just take, you know –- for like hyperacting (sic) –- you
>                     know, Prozac, Melanson (phonetic), different things. I get
>                     social security for that every month.
>
> THE COURT:          Okay.  Do you know the diagnosis though?
>
> THE DEFENDANT: No.  My mother knows, but my mother passed away
>                     yesterday.
>
> THE COURT:          Okay.
>
> THE DEFENDANT  Depression.
>
> THE COURT:          Is it depression? Okay.  And, Mr. Morris, did you have him
>                     examined during the course of these proceedings?
>
> MR. MORRIS:         I haven't had any reason to believe that he's incompetent to
>                     proceed. He's been very interactive with me.
>
> THE COURT:          Okay.  But are you aware that he had, apparently, some
>                     issues with depression at some point, or does?
>
> MR. MORRIS:         Yes.  I've spoken with his family members, including his
>                     sister, as well as his mother, at one point in time.

THE COURT:          Okay.  Are you currently on medication for depression, Mr. Ellis?

THE DEFENDANT: Yes, ma'am.  I take it at the county jail.

THE COURT:          Okay.  Do you take it every day?

THE DEFENDANT: Three times a day, yes, ma'am.

THE COURT:          Three times a day?

THE DEFENDANT: I mean, two times a day.

THE COURT:          Two times a day?  Okay.

THE DEFENDANT: I'm sorry.

THE COURT:          Did you take your dose that you were due today?

THE DEFENDANT: I just took it this morning.

THE COURT:          Okay.  Does it help you think more clearly, or less clearly?

THE DEFENDANT: It help me feel calm, and it makes me, you know –- sleep, you know –- be more calm.

THE COURT:          Okay.  Now, do you understand that I'm having this discussion with you?  You seem alert, but I have to rely on your answer.  You may be a little tired or a little sleepy, and that's okay, if that's okay with you.  Do you understand the principle?  I can always have this discussion –- if you're too sleepy, we can do it at another time when you feel more alert.  Do you understand that principle?

THE DEFENDANT: Yes, ma'am.

THE COURT:          Do you feel prepared to go forward right now, or are you too groggy, or are you –- how do you feel?

THE DEFENDANT: I'm just feeling hurt this morning, because I lost my mother yesterday.  She passed away.  And I'm just trying to, you know, do what's best to get on with my life, you know –-

THE COURT:          Okay.

THE DEFENDANT: I've got my girl out there with nobody to watch her.  My sister lost –- now she's gone –- I'm just so hurt.

THE COURT:        So you have a lot of issues hanging out there?

THE DEFENDANT: Yeah. I'm just trying to take care of everything, you know –- the best way I can.

THE COURT:        Okay.  Now, these may be motivations, everybody – every defendant who stands up here has a different reason for entering a plea.  Sometimes it's because they want to get out of jail, and they don't care what –- and sometimes they have things that have happened in their family.  Those are personal reasons to make a decision.  But do you understand they're not a basis for you later, a week from now, or three months from now, for you to wake up and say, you know, I really shouldn't have entered that plea, now I've changed my mind?  That won't be a reason to change you mind later.  Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:        And, especially, in your case, where we've come to this point, apparently, several times.

THE DEFENDANT: Yes, ma'am.

THE COURT        And, so, you know –- *we're not going to go through this and have it withdrawn.*  Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:        Okay.  So you should enter this plea only with the assumption that it's a permanent decision, that you're going to have to live with the consequences.  We'll have a sentencing hearing and I'll make a decision what to do with you, only after that hearing.  *But if it doesn't go the way you want it to, you won't be able to just say, oh-well, now, I want to withdraw my plea and start all over again.*  Do you understand that?

THE DEFENDANT: No, ma'am.  I'm just going –- *I'm just going to get it over with, you know –- I participated.  So, therefore, I'm just going to accept the consequences.*

Ex. D1, pp. 13-17.  The court then asked if Petitioner had "taken any other drugs,

alcohol, pills, medicine that we have not talked about," and Petitioner said, "No, Ma'am."

*Id.*, p. 20.

Petitioner told Judge Dekker that his attorney had not failed or refused to

investigate any defense or defense witness on his behalf, and that his best witness,

probably his mother, had died the day before.  *Id.*, pp. 20-21.  When he mentioned

further investigation as to his brother, Morris explained that other siblings may have

been involved, that bank drafts were drawn on different accounts in different names,

and "there are defenses that are all over the place, and they involve dozens of different

witnesses."  *Id.*, pp. 22-23.  The court told Petitioner that his attorney said that the

"case" (that is, investigation) was not yet finished, and that Petitioner's attorney was not

abandoning possible defenses unless it was acceptable to Petitioner, and Petitioner

said, "It's okay.  I'm just going to plead."  *Id.*, p. 23.

In challenging a guilty plea, representations made by defendant and counsel

"constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn

declarations in open court carry a strong presumption of verity."  Blackledge v. Allison,

431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted);

United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987).

Petitioner's only argument before this court is to present portions of exactly the same

plea colloquy.  No new evidence has been offered.  Thus, to the extent that the state

court's denial of this claim depends upon factual findings, those findings have a

presumption of correctness, and Petitioner has not rebutted that presumption with clear

and convincing evidence as required by § 2254(e)(1).

The trial court's finding that Petitioner was knowingly entered is sound.  The trial court engaged Petitioner in a lengthy discourse.  Petitioner responded with intelligence and understanding.  The only medication that he mentioned was medication for depression, which had a calming effect.  He denied that this medication made him so sleepy that he could not comprehend what was going on.  Consequently, Petitioner has failed to show that the trial court's ruling on Petitioner's competence to plead no contest has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" as required by § 2254(d)(1) and (2).  Ground two affords no relief.

**Ground one**

Petitioner contends his trial and appellate attorneys were ineffective for failing to move to withdraw his guilty plea, failing to argue that he suffers from bipolar disorder and that he was "under" Thorazine and Prozac when he entered the no contest plea. Doc. 1, p. 4.

In his response, Petitioner adds that his attorney was ineffective for failing to file the Rule 3.170(b) motion, forcing Petitioner to file it *pro se*.  Doc. 12, p. 4.  He alleges his attorney failed to investigate the culpability of his brother and alibi witnesses.  *Id.*  He alleges his attorney erred when he failed to object when the prosecutor called him "this animal."[9]  *Id.*  He asserts that his trial counsel was ineffective for failing to show him

---

[9] The prosecutor did not.  At the hearing to withdraw the plea, the prosecutor said he did not know who had the burden of proof at the hearing, as he had "not dealt with this animal before."  Ex. K2.  The word "animal" refers to a hearing to withdraw the plea,

discovery materials, and to discuss with him the evidence against him.  *Id.*, p. 5.  He

asserts that Judge Dekker appointed Frank Sheffield to file a brief on appeal from denial

of the Rule 3.170 motion, but Sheffield never filed a brief.  *Id.*, p. 6.  Given Petitioner's

*pro se* status, all of this will be considered.

### Ineffective assistance of appellate counsel

Petitioner cannot show prejudice with respect to actions by Mr. Sheffield as

appellate counsel in 2005.  As explained above in footnote 5, in 2008 Petitioner was

granted a belated appeal from denial of the Rule 3.170(1) motion, he was appointed

counsel who filed an *Anders* brief, he filed his own *pro se* brief, and the appeal was

denied.

State court remedies as to any claim that Petitioner's appellate attorney on direct

appeal in 2008 was ineffective for filing nothing more than an *Anders* brief are

unexhausted.  A claim of ineffective assistance of appellate counsel in Florida must be

presented by a petition for writ of habeas corpus to the appellate court.  Rutherford v.

Moore, 774 So. 2d 637, 643 (Fla. 2000); FLA. R. APP. P. 9.141(d).  Petitioner has not

pursued this remedy and now he is barred by the two year statute of limitations from the

date of the judgment, which was on May 1, 2009, when the mandate issued.  Ex. WW;

FLA. R. APP. P. 9.141(d)(5).  Petitioner has not shown cause or prejudice for this default,

or prejudice to the outcome.  Prejudice cannot be shown because the plea was not

involuntary.  Thus, this court cannot reach any latent claim of ineffective assistance of

appellate counsel in 2009.

---

not to Petitioner.  Referring to a legal or another problem as "this animal" is a somewhat
common expression.

**Ineffective assistance of trial counsel**

The trial that the court must go down to discern whether Petitioner exhausted state court remedies as to these claims is labyrinthine.[10]

On September 21, 2005, Petitioner filed a *pro se* motion.  Ex. G.  It did not allege ineffective assistance of counsel.  *Id.*  State Circuit Judge Dekker denied it as an improper motion.  Ex. I.

On September 27, 2005, Petitioner filed another motion which was, in effect, a Rule 3.170 motion to withdraw his plea.  Ex. J.  In this motion, Petitioner alleged that his lawyer did not advise him of the sentencing score sheet, that his mother had just died, he was "on medicare" and not in his right mind, and he asked to withdraw his no contest plea.  *Id.*  Petitioner was appointed counsel, Ex. K1, and a non-evidentiary hearing was held, Ex. K2.  These claims have been fully discussed above.

On December 8, 2005, Petitioner filed a second Rule 3.170 motion to vacate his no contest plea, alleging that counsel was ineffective because he had no prior criminal history and was sentenced outside the guidelines, and arguing that there was newly discovered evidence, that his brother had confessed to all of Petitioner's charges.  Ex. N.  It was denied as successive on January 25, 2006.  Ex. O.  The court ruled that the claims of ineffectiveness were not addressed because they had to be brought by a Rule 3.850 motion.  *Id.*

On December 13, 2005, Petitioner filed a Rule 3.850 motion.  Ex. P.  It is this motion that conceivably exhausted state court remedies as to the claims of

---

[10] This task is necessary since Petitioner filed so many state court motions, but presents only a few claims of ineffective assistance of trial counsel in this court.

ineffectiveness of trial counsel now before this court.  Petitioner alleged that he was

sentenced in violation of double jeopardy.  *Id.*  He alleged that his attorney, Robert

Morris, was ineffective because he failed to show that Petitioner was mentally ill and his

mother had died, and that his brother had committed the crimes.  *Id.*  The Rule 3.850

motion was summarily denied as procedurally deficient because it was not under oath.

Ex. T.  The court also said that if a merits ruling was to be made, it would be denied on

the merits as to the double jeopardy claim and the "new evidence," that his brother

committed the crimes, as facially insufficient, consisting of only vague and conclusory

allegations.  *Id.*  The claim that the plea was involuntary was denied on the merits

because the court had already ruled on that after a hearing.  *Id.*

Petitioner filed an appeal from several orders, including the order on the Rule

3.850 motion.  Ex. W.  After several attorneys were discharged, including dismissal of

the last attorney, Charles Hobbs, on Petitioner's motion, Petitioner proceeded *pro se* on

that appeal because the trial court had denied Petitioner's Rule 3.850 motion as facially

insufficient for lack of an oath.  Ex.  X6.  Petitioner sought appointment of counsel again,

and that was denied.  Ex. X7.  Petitioner argued in his  *pro se* brief a number of claims,

most of which he had not presented to the trial court in his Rule 3.850 motion.  He

claimed that his trial attorney was ineffective at sentencing for a variety of reasons

which had not been presented to the trial court in the Rule 3.850 motion.  He claimed

that counsel was ineffective at the plea withdrawal hearing because counsel did not

object when the prosecutor said he had not dealt with "this animal" before.  That claim

was not in the Rule 3.850 motion and was without merit for reasons explained above in

a footnote 9.  He alleged that trial counsel was ineffective at the plea colloquy because

the prosecution threatened additional charges if he did not enter a plea and that his attorney failed to investigate, including a failure to discover Plaintiff's mental disorder. *Id.*, pp. 2-5.  Petitioner did not explain the relevance of "mental disorder," whether as a defense to the charges or a reason he could not enter a plea.  Later in the brief, however, he argued that he was on so much medication that he could not make a rational decision about the plea.  *Id.*, p. 8.

The appellate court affirmed the denial of the motions on appeal without a written opinion.  Ex. AA.  This included affirmation of the denial of the Rule 3.850 motion.  Ex. AA.

I conclude from this that Petitioner did exhaust state court remedies as to the claim that his trial counsel was ineffective at the plea colloquy because he failed to show that he was mentally ill and incompetent to enter a plea, that he was not able to enter a plea because his mother had just died, and because he should not have entered a plea because his brother took responsibility for committing all of the crimes.

All of the other claims presented on appeal were not in the Rule 3.850 motion, and thus state court remedies were not exhausted as to those claims.  Petitioner has not shown cause or prejudice for the default, and this court cannot address those claims.

The court can address the exhausted claim, that Petitioner's counsel was ineffective during the plea colloquy because he failed to show that Petitioner was mentally ill, that his mother had just died, and that his brother had committed the crimes. This claim is without merit for the reasons discussed above.  The state court thoroughly reviewed these contentions in the context of the motion to withdraw the no contest plea.

There could be no attorney error or prejudice to the outcome when the claims that Petitioner wished his attorney to present were without merit.   Consequently, Petitioner has failed to show that the trial court's ruling on this ineffective assistance of trial counsel claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" as required by § 2254(d)(1) and (2).   Ground one affords no relief.

**Ground three**

Petitioner contends that he was denied counsel on his direct appeal.  Doc. 1, p. 5.  The claim is without merit because Petitioner confuses his two appeals.  Petitioner's *direct* appeal was the belatedly granted appeal and he was represented by public defender Joel Arnold.  Ex. UU.  See footnote 5, above.  It is true that Petitioner had filed a *pro se* appeal before that, but the appellate court treated that as a post-conviction appeal as to which there was no right to counsel.[11]  Besides, Petitioner asked for his attorney to be discharged on that appeal so that he could represent himself, as explained above.  Petitioner is not entitled to relief as to ground three.

---

[11] There is no right to counsel in state post-conviction proceedings.  <u>Jones v. Crosby</u>, 137 F.3d 1279, 1280 (11th Cir.), *cert. denied*, 523 U.S. 1041 (1998), *citing*, <u>Murray v. Giarratano</u>, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

**Ground four**

Petitioner first claims that his plea was involuntary due to mental disability and medications.  This is a repeat of ground two and is likewise without merit.

He also claims that the state court erred when it ordered Petitioner not to file motions.  On May 5, 2006, the state circuit court listed 21 motions that Petitioner had filed since September 21, 2005, and ordered Petitioner to show cause why he should not be prohibited from filing another motion.  Ex. HH.  On June 6, 2006, the state circuit court ordered Petitioner to stop filing motions unless signed by an attorney licensed to practice in Florida.  Ex. JJ.  Even if this was error, and it does not appear to have been, given the scattered number of motions that Petitioner filed, a claim that the post-conviction proceedings were unfair or marred by procedural error does not state a federal claim.  Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987) (state court's failure to hold a hearing on a Rule 3.850 motion and failure to attach relevant portions of the record to its order were unrelated to the cause of detention, and did not state a basis for § 2254 relief); *see also* Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999) ("habeas corpus relief is not available to correct alleged errors in state habeas proceedings," citing Spradley, and cases from the Fourth, Fifth, Sixth, Eighth and Ninth Circuits).   Ground four affords no relief.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Jeremy Ellis pursuant to 28 U.S.C. § 2254, challenging his convictions in case numbers 2005-CF-964,  2005-CF-991, and 2005-CF-1073, n the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida , be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on November 4, 2011.

s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

   **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**